IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LARRY WILLIAMS,<br><br>        Petitioner,<br><br>vs.<br><br>SUPERINTENDENT,<br><br>        Respondent. | No. 9:17-cv-00380-JKS<br><br>MEMORANDUM DECISION |

       Larry Williams, a New York state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Williams is in the custody of the New York State Department of Corrections and Community Supervision and incarcerated at Cayuga Correctional Facility. Respondent has answered the Petition, and Williams has replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

       On June 17, 2010, Williams was charged him with second-degree arson, two counts of second-degree criminal possession of a weapon, first-degree attempted assault, two counts of third-degree criminal possession of a weapon, first-degree reckless endangerment, first-degree unlawful imprisonment, second-degree menacing, second-degree reckless endangerment, and two counts of fourth-degree criminal possession of a weapon. The charges stemmed from an incident where Williams held his fiancee at gunpoint, locked her in a bedroom, and set fire to their apartment.

       Williams filed a pre-trial motion to suppress physical evidence seized from his person when he was arrested, which were found in his pockets and in the lining of his coat. Following a hearing, the trial court denied suppression of the physical evidence, finding that law enforcement had

probable cause to arrest Williams prior to searching him based upon information obtained at the scene and the identification of Williams with specificity.

Defense counsel also hired an expert to examine William's mental capacity and filed a notice of intent to use a mental disease or defect defense on the grounds that Williams suffered from hallucinations. The court noted that the notice was untimely and deficient because it identified a symptom rather than an alleged disease or defect. Counsel subsequently filed another notice of intent, which apparently included a preliminary diagnosis of psychotic disorder induced by a recreational drug.[1]

On November 15, 2010, Williams appeared with counsel for the purposes of entering a guilty plea. Under the negotiated disposition agreement, Williams would plead guilty to the first count of the indictment (second-degree arson) in exchange for a single 10-year determinate term of imprisonment with 5 years of post-release supervision. After the court explained the terms of the agreement in detail, and responded to Williams' question about the post-release supervision term by explaining the concept of post-release supervision, Williams confirmed that he understood the terms of the plea bargain. Williams answered in the negative when asked whether he had been induced to accept the agreement by any other statements or promises or any threats. When asked whether he had any physical or mental problems or had taken any drugs or alcohol that might impair his understanding of the plea proceedings, Williams answered, "No, sir." Williams additionally agreed that he had sufficient time to discuss the case with his attorney and acknowledged that he understood that he would be giving up his right to trial and the attendant rights by pleading guilty.

---

[1] The notice is discussed in hearing minutes but does not itself appear in the record.

Williams stated that he had no questions about the rights he was "giving up, the terms of the plea bargain or the consequences of pleading guilty."

Williams then admitted that he "intentionally caused damage to a building . . . by starting a fire, and . . . another person . . . who was not a participant in the arson, was present in the building." The court accepted Williams's plea as "a voluntary plea with a factual basis." Williams additionally admitted that he had been convicted of second-degree murder in 1980, and was in custody for that crime until 2003 and on parole for that conviction until 2006.

At sentencing, defense counsel presented a November 27, 2010, report from the defense expert who had diagnosed William with substance-induced psychosis and asked that the report be made part of Williams' confinement record. Williams was subsequently sentenced as a second felony offender to the agreed-upon term of 10 years' imprisonment and 5 years of post-release supervision.

Williams filed a *pro se* motion to vacate the judgment pursuant to New York Criminal Procedure Law ("CPL") § 440.10 on the ground that his attorney rendered ineffective assistance by failing to: a) investigate witness statements and determine whether the rifle was operable and/or loaded; b) request a mental competency examination; c) request that the court inspect the grand jury minutes; d) object to the People's failure to response to his speedy trial claims; and e) object to jurisdictional defects in the indictment. The People opposed the motion. The county court denied the motion in a reasoned, unpublished decision issued on March 22, 2013.

Through counsel, Williams additionally appealed his conviction,[2] arguing that: 1) Williams's written statement to law enforcement when he was arrested was involuntary and obtained in

---

[2] The plea agreement did not include a waiver of the right to appeal.

violation of *Miranda v. Arizona*, 384 U.S. 436 (1966); 2) his guilty plea was not knowingly, voluntarily, and intelligently made; and 3) his sentence was unduly harsh and severe.

Williams then filed a *pro se* petition for a writ of error *coram nobis*, claiming that appellate counsel was ineffective because he "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." The People opposed the petition. The Appellate Division summarily denied the petition, *People v. Williams*, 11 N.Y.S.3d 504, 504 (N.Y. App. Div. 2015), and the Court of Appeals denied leave to appeal without comment on September 18, 2015, *People v. Williams*, 40 N.E.3d 587, 587 (N.Y. 2015).

Williams filed a second *pro se* motion to vacate the judgment and to set aside his sentence pursuant to CPL §§ 440.10 and 440.20, challenging the arson conviction as well as his 1980 second-degree murder conviction. The county court denied the motion in a reason, unpublished opinion issued on November 10, 2015.

Williams filed the instant *pro se* Petition for a Writ of Habeas Corpus to this Court on March 31, 2017. Docket No. 1 ("Petition"); *see* 28 U.S.C. § 2244(d)(1)(A).

## II. GROUNDS RAISED

In his *pro se* Petition before this Court, Williams raises the following claims: 1) the police did not have probable cause to arrest him; 2) his prior conviction was constitutionally invalid because it was obtained through the prior court's ruling that allowed the prosecutor to cross-examine Williams with statements made to law enforcement after Williams had invoked his right to counsel; 3) Williams was mentally incompetent, he was not able to testify at the suppression hearings, he was unable to understand the proceedings, and he is actually innocent of the crime; 4) and trial counsel was ineffective because he: a) misquoted facts at the "arrest

4

stage;" b) allowed the court to conduct hearings while Williams was in the mental health unit cell and unable to assist in his defense; c) allowed a police officer to perjure himself; d) failed to challenge the constitutionality of his prior conviction; e) failed to challenge the judge's impartiality; and f) failed to object to the description of the resident who called an ambulance for Williams.

### III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application

of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). Where there is no reasoned decision of the state court addressing the ground or grounds raised on the merits and no independent state grounds exist for not addressing those grounds, this Court must decide the issues de novo on the record before it. *See Dolphy v. Mantello*, 552 F.3d 236, 239-40 (2d Cir. 2009) (citing *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)); *cf. Wiggins v. Smith*, 539 U.S. 510, 530-31 (2003) (applying a de novo standard to a federal claim not reached by the state court). In so doing, the Court presumes that the state court decided the claim on the merits and the decision rested on federal grounds. *See Coleman v. Thompson*, 501 U.S. 722, 740 (1991); *Harris v. Reed*, 489 U.S. 255, 263 (1989); *see also Jimenez v. Walker*, 458 F.3d 130, 140 (2d Cir. 2006) (explaining the *Harris-Coleman* interplay); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810-11 (2d Cir. 2000) (same). This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court. *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011) (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference); *Jimenez*, 458 F.3d at 145-46. Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

IV. DISCUSSION

A.     Timeliness

Respondent urges the Court to dismiss Williams' Petition as untimely.

The AEDPA provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

An untimely petition is subject to dismissal. *Day v. McDonough*, 547 U.S. 198, 201 (2006); *Jenkins v. Greene*, 630 F.3d 298, 305 (2d Cir. 2010). Here, Respondent argues that Williams' Petition was filed 98 days late and should be dismissed as untimely.[3] Williams argues in his

---

[3] It additionally appears that Respondent erroneously calculated the date that Williams' conviction became final. The Appellate Division affirmed the judgment against Williams on June 20, 2014, *Williams*, 988 N.Y.S.2d at 773, and the Court of Appeals denied leave to appeal on February 9, 2015, *Williams*, 28 N.E.3d at 46. Williams' conviction became final 90 days later, on May 9, 2015, the conclusion of the period during which Williams could have sought certiorari review in the United States Supreme Court. *See Williams v. Artuz*, 237 F.3d 147, 150-51 (2d Cir. 2001). Rather than using the date the Court of Appeals denied leave, Respondent refers to November 14, 2014, the date that the Appellate Division denied reargument, and thus incorrectly states that Williams' conviction became final on February 12, 2015. Docket No. 22 at 15.

7

Traverse that the Petition was properly filed within the one-year AEDPA period. Although unclear, it appears that Williams alleges that a second petition for a writ of error *coram nobis* was filed in state court around October 19, 2016, which tolled the limitations period and renders his Petition timely. That motion was not included in the record before this Court, and Respondent's filings do not reflect the filing of such motion. Williams avers that the records were destroyed. This Court could not find this petition by independent search of the state trial records, but, in an abundance of caution and given the fact that, as discussed below, this case may be more easily resolved on the merits, the Court declines to decide the case on procedural grounds. *See Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) (stating that bypassing procedural questions to reach the merits of a habeas petition is justified "if the [underlying issues] are easily resolvable against the habeas petitioner, whereas the procedural bar issue involved complicated issues of state law"); *Boddie v. New York State Div. of Parole*, 288 F. Supp. 2d 431, 439 (S.D.N.Y. 2003) ("[P]otentially complex and difficult issues about the various obstacles to reaching the merits [of a habeas petition] should not be allowed to obscure the fact that the underlying claims are totally without merit.") (quotation omitted). Accordingly, the Court will address the merits of Williams' claims, as discussed below.

B. Merits

    1. <u>*Unlawful Arrest*</u>

Williams first argues that the police arrested him without probable cause. Williams raised this claim on direct appeal, and the Appellate Division rejected the claim as unpreserved. *Williams*, 988 N.Y.S.2d at 772.

As an initial matter, Respondent correctly argues that this claim is procedurally barred from federal habeas review as well. "[A]n adequate and independent finding of procedural default will

8

bar federal habeas review of the federal claim." *Harris*, 489 U.S. at 262. In finding the unlawful arrest claim unpreserved for appellate review, the Appellate Division relied upon New York's contemporaneous objection rule, New York Criminal Procedure Law ("CPL") § 470.05(2), which has long been considered an "adequate and independent ground" that bars federal habeas review. *See Whitley v. Ercole*, 642 F.3d 278, 292 (2d Cir. 2011). New York's rule requires that an alleged error be "brought to the attention of the trial court at a time and in a way that [gives it] the opportunity to remedy the problem and thereby avert reversible error." *People v. Luperon*, 647 N.E.2d 1243, 1246-47 (N.Y. 1995). As the record supports that defense counsel did not raise this particular contention at trial , the Appellate Division properly applied New York's adequate and independent contemporaneous objection rule, and his unlawful arrest claim must be denied on that basis.

Moreover, Williams' unlawful arrest claim is foreclosed by the Supreme Court's decision in *Stone v. Powell*, 428 U.S. 465 (1976). Under *Stone*, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim," federal habeas corpus relief will not lie for a claim that evidence recovered through an illegal search or seizure was introduced at trial. *Id.* at 482. The *Stone v. Powell* doctrine applies to all Fourth Amendment claims, including claims of illegal stops, arrests, searches, or seizures based on less than probable cause, and it applies regardless of the nature of the evidence sought to be suppressed. *Cardwell v. Taylor*, 461 U.S. 571, 572-73 (1983) (per curiam).

The Second Circuit has made clear that all *Stone* requires is that the State provide a petitioner the opportunity to litigate his Fourth Amendment claim. *See McPhail v. Warden, Attica Corr. Facility*, 707 F.2d 67, 69-70 (2d Cir. 1983). In order to receive habeas review of a Fourth

9

Amendment claim, a petitioner must demonstrate either that the State failed to provide any "corrective procedures" by which Fourth Amendment claims could be litigated, or that the State had such procedures in place but that the petitioner was unable to avail himself of those procedures "because of an unconscionable breakdown in the underlying process." *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992). A "mere disagreement with the outcome of a state court ruling is not the equivalent of an unconscionable breakdown in the state's corrective process," and thus is insufficient to give this Court authority to review Fourth Amendment claims. *Id.* at 72. That New York has in place such procedures is well-settled. *See id.* at 70 & n.1. Williams has not asserted the existence of an unconscionable breakdown of that process, nor has he alleged any facts that would demonstrate such a breakdown in this case. Williams therefore cannot prevail on his challenge to the legality of his arrest, and any claim that the resulting evidence should have been suppressed also fails.

2. *Prior Conviction*

Williams next claims that he was improperly adjudicated a second violent felony offender. As an initial matter, however, Respondent correctly contends that Williams failed to exhaust this claim. This Court may not consider claims that have not been fairly presented to the state courts. 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases). Exhaustion of state remedies requires the petition to fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights. *Duncan v. Henry*, 513 U.S. 364, 365 (1995). A petitioner must alert the state courts to the fact that he is asserting a federal claim in order to fairly present the legal basis of the claim. *Id.* at 365-66. An issue is exhausted when the substance of the federal claim is clearly raised and decided in the

state court proceedings, irrespective of the label used. *Jackson v. Edwards*, 404 F.3d 612, 619 (2d Cir. 2005). To be deemed exhausted, a claim must also have been presented to the highest state court that may consider the issue presented. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In New York, to invoke one complete round of the State's established appellate process, a criminal defendant must first appeal his or her conviction to the Appellate Division and then seek further review by applying to the Court of Appeals for leave to appeal. *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005). Further, "when a 'petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' the federal habeas court should consider the claim to be procedurally defaulted." *Clark v. Perez*, 510 F.3d 382, 390 (2d Cir. 2008) (citation omitted); *see also Grey v. Hoke*, 933 F.2d 117, 121 (2d Cir. 2001).

Here, Williams did not raise this sentencing error to the state courts. Under New York law, a claim that a sentence is illegal can typically be raised at any time. N.Y. CPL § 440.20(1). This Court has the discretion, but is not obligated, to stay these proceedings and hold the unexhausted claims in abeyance pending exhaustion in the state courts. *Day v. McDonough*, 547 U.S. 198, 209 (2006); *Rhines v. Weber*, 544 U.S. 269, 275-76 (2005). Even if Williams could establish the requisite good cause for failing to exhaust his claims, which does not appear from his filings, *Rhines* would still require that the Court deny his stay request because, as discussed *infra*, the claim is "plainly meritless." *Rhines*, 544 U.S. at 277.

Moreover, Williams' claim is not cognizable on habeas review since the claim is grounded in state law. As the Second Circuit has concluded, "[i]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions," and "[w]hether a New York court

11

erred in applying a New York recidivist sentencing enhancement statute is a question of New York State law, not a question of fact." *Saracina v. Artus*, 452 F. App'x 44, 46 (2d Cir. 2011) (quoting *Estelle*, 502 U.S. at 67-68); *see also Coons v. Superintendent*, No. 9:11-CV-1502, 2014 WL 316757 at * 11 (N.D.N.Y. Jan. 28, 2014) (petitioner's claim that his sentence was improperly enhanced was grounded in state-law and not cognizable on habeas review).

Furthermore, Williams' claim is without merit. Here, Williams was previously convicted of second-degree murder, a felony, and he was subsequently convicted of second-degree arson, also a felony. *See* N.Y. PENAL LAW §§ 70.00(2)(a), (3)(a), 125.25, 70.02(1)(a), 150.15. Thus, Williams was properly adjudicated as a second felony offender under New York law, and he is not entitled to relief on this claim.

3. *Challenges to Guilty Plea*

Williams additionally avers that he was mentally incompetent, unable to understand the proceedings, and actually innocent of the crime. Construing Williams' *pro se* Petition liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), this Court may discern that Williams raises three potential arguments challenging his guilty plea: 1) his plea was involuntary, unknowing, or unintelligent; 2) the trial court should have rejected his plea and instead adjudicated him not guilty due to mental disease or defect; and 3) he is actually innocent of the crime.

When a guilty plea is not "voluntary and knowing, it has been obtained in violation of due process and is therefore void." *Boykin v. Alabama*, 395 U.S. 238, 243 n.5 (1969) (citing *McCarthy v. United States*, 394 U.S. 459, 466 (1969)). Because a guilty plea is a waiver of certain constitutional rights, it must be a voluntary, knowing, and intelligent act "done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S.

742, 748 (1970). The voluntariness of a plea "can be determined only by considering all of the relevant circumstances surrounding it." *Id.* at 749.

As an initial matter, Williams' attack to the voluntariness of his plea is, in part, procedurally barred from federal habeas review. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991) (federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment"). Where a state-court holding contains a plain statement that a claim is procedurally barred, the federal habeas court may not review it, even if, as here, the state court also rejected the claim on the merits in the alternative. *See Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989) (explaining that "a state court need not fear reaching the merits of a federal claim in an *alternative* holding" so long as it explicitly invokes a state procedural rule as a separate basis for its decision"); *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990). The New York procedural rule applied by the Appellate Division—that a challenge to the sufficiency or voluntariness of a guilty plea must be preserved by moving to withdraw the plea or vacate the judgment—has been recognized as an independent and adequate ground for dismissal. *See, e.g.*, *Crumpler v. Khahaifa*, No. 10-CV-0819, 2011 WL 6409221, at *7 (W.D.N.Y. Dec. 21, 2011); *Garcia v. Boucaud*, No. 09 Civ. 5758, 2011 WL 1794626, at *3 (S.D.N.Y. May 11, 2011); *Escalante v. Smith*, 9:06-cv-1506, at *6 (N.D.N.Y. May 18, 2009).

It does not appear, however, that the invocation of a state procedural bar precludes this Court from reviewing on the merits Williams' claim that he was incompetent when he entered his guilty plea. *See Silverstein v. Henderson*, 706 F.2d 361, 367-68 (2d Cir. 1983) (prisoner's failure to object or challenge his competency to stand trial on direct appeal did not constitute a waiver of his rights

13

and an independent and adequate state ground immune from attack on federal habeas review). Nonetheless, the record belies any contention that Williams was not competent to enter his plea. A criminal defendant may not be tried unless he is competent, and he may not waive his right to counsel or plead guilty unless he does so 'competently and intelligently.'" *Godinez v. Moran*, 509 U.S. 389, 398 (1993). The standard for determining competency to stand trial and competency to plead guilty are the same. *Id*. at 399. The determination turns on whether the defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and has "a rational as well as factual understanding of the proceedings against him." *Id*. at 396 (citation omitted).

The Due Process Clause does not require a competency hearing in every case; a hearing is required only if the court has "reasonable cause" to believe that the defendant has a mental defect rendering him incompetent. *United States v. Nichols*, 56 F.3d 403, 414 (2d Cir. 1995); *see Pate v. Robinson*, 383 U.S. 375-76 (1966) (holding that the failure of a trial court to hold a competency hearing *sue sponte* may violate due process if there is sufficient evidence to cast doubt upon a defendant's competency). There are "no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed." *Silverstein*, 706 F.2d at 369 (quoting *Drope v. Missouri*, 420 U.S. 162, 180 (1975)). "Reviewing courts should consider the indicia of incompetence that were before the trial judge, which may include a defendant's history of erratic or irrational behavior, bizarre courtroom conduct, defense counsel's expression of doubt about the client's competence, or medical reports. *Smith v. Rock*, 554 F. Supp. 2d 505, 519 (S.D.N.Y. 2008) (citations omitted).

Here, the record indicates that, upon arrest, Williams was placed in the mental health section of the jail and a mental competency exam was performed, a copy of which does not appear in the record. There is no indication in the record that Williams was ever determined to be incompetent. But even accepting as true Williams' contentions that he had diminished capacity, there is no indication that Williams' plea was involuntarily made. An independent review of the record reveals that Williams gave coherent and clear responses to the court's questioning during the plea allocution. Williams offers no evidence that his mental impairments prevented him from understanding the proceedings, particularly given that he answered the court's questions appropriately and without difficulty. *See Lear v. Poole*, 711 F. Supp. 2d 288, 296 (W.D.N.Y. 2010) (petitioner's "in-court, under-oath statements . . . completely undermine his contention that he was too disoriented to [have] understood what occurred at the plea hearing"). During that allocution, he confirmed that he had discussed the plea with his attorney, that he understood he was giving up certain rights, and also that he understood that the sentence he was facing. Williams did not exhibit any bizarre or irrational behavior which might have alerted the court to the possibility that he could not understand the proceedings or rationally aid in his own defense, and Williams answered in the negative when asked if he had "any physical or mental problems that would affect [his] understanding of" the proceedings." Solemn declarations in open court carry a strong presumption of verity, and "[t]he subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

Moreover, assuming he was being treated for mental health issues, "[i]t is well-established that some degree of mental illness cannot be equated with incompetence to stand trial." *Nichols*, 56

F.3d at 412 (concluding that the fact that five of six psychiatric reports indicated evidence of paranoia or paranoid delusions, and that two indicated the possible onset of psychosis at certain periods, did not undermine the court's finding of competency) (citation omitted). Rather, "[t]he mental illness must deprive the defendant of the ability to consult with his lawyer . . . and to understand the proceedings against him rationally as well as factually." *Id*. Here, there are no indications, other than Williams' own after-the-fact assertions, that he could not understand the proceedings or assist in his own defense. The Supreme Court has not held that a state court must specifically inquire into a defendant's history of mental illness or medication regiment to satisfy due process requirements in accepting a plea. *See Musumeci v. NYS Dep't of Corr.*, No. 07-CV-6384, 2010 WL 2287486, at *4 (W.D.N.Y. June 1, 2010) at *4; *Royster v. Perez,* No. 08 CV 131, 2009 WL 1505278, *4 (E.D.N.Y. May 28, 2009) (rejecting challenge to validity of guilty plea based on trial court's failure to inquire into history of mental illness and the medications taken by petitioner).

This Court owes the county court's implied determinations regarding competency deference given that court's ability to observe Williams during the proceedings. *See United States v. Vowteras*, 500 F.2d 1210, 1212 (2d Cir. 1974). That implicit determination of competency is an issue of fact, entitled to deference upon federal habeas review. *See Francis S. v. Stone*, 221 F.3d 100 (2d Cir.2000). Under the AEDPA, the Court may only grant habeas relief where the state court's determination was either "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding," or "contrary to, or . . . an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). As the discussion above makes clear, there is no basis for this Court to conclude

16

that the state court's decision either unreasonably applied or contravened clearly established federal law. Williams' attacks on the voluntariness of his plea therefore fail.

Likewise, any claim that the trial court should not have accepted his plea and instead adjudicated him not guilty by reason of mental disease or defect is barred by his guilty plea. *See Bakic v. United States*, 971 F. Supp. 697, 700 (N.D.N.Y. 1997) (voluntary guilty plea precludes subsequent collateral attack based on insanity defense); *see also United States v. Bendicks*, 449 F.2d 313, 315 (5th Cir. 1971) (insanity defense is non-jurisdictional). A defendant who pleads guilty to a charged offense "may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *see also Hill v. Lockhart*, 474 U.S. 52, 56-57 (1985). "It is well settled that a defendant's plea of guilty admits all of the elements of a formal criminal charge, and, in the absence of a court-approved reservation of issues for appeal, waives all challenges to the prosecution except those going to the court's jurisdiction." *Hayle v. United States*, 815 F.2d 879, 881 (2d Cir. 1987) (internal citation omitted). The later assertion of a defense to the criminal charge which does not challenge the court's jurisdiction is therefore precluded by a guilty plea. *See United States v. Hsu*, 669 F.3d 112, 117-18 (2d Cir. 2012) (noting that a defendant ordinarily waives a statute of limitations defense by pleading guilty to an offense).

Finally, to the extent Williams challenges his guilty plea on the basis of actual innocence, that claim must also fail. Notably, the Constitution allows a defendant to plead guilty while maintaining his innocence. *Edwards v. Carpenter*, 529 U.S. 446, 448 (2000); *see also No. Carolina v. Alford*, 400 U.S. 25, 37 (1970) (holding that a defendant "may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to

17

admit his participation in the acts constituting the crime"). A "court can accept a guilty plea even when a defendant maintains his innocence, 'as long as there exists a strong factual basis for the plea.'" *United States v. Reingold*, 731 F.3d 204, 209 (2d Cir. 2013); *see also Oppel v. Meachum*, 851 F.2d 34, 35 n.2 (2d Cir. 1988) (per curiam) (stating that a trial court may "accept a guilty plea from a defendant who maintains his innocence where the court finds that there is a strong factual basis to support the crime charged, the plea of guilty is the result of an intelligent conclusion that the defendant's interests require entry of the guilty plea, and there is a benefit conferred on the defendant by virtue of the plea"). Here, Williams did not maintain his innocence, but admitted his guilt under oath. As the Appellate Division noted in reasonably rejected Williams' challenge to the factual sufficiency of his plea allocution, "[t]he record establishes that [Williams] confirmed the accuracy of Supreme Court's recitation of the facts underlying the crime." *Williams*, 988 N.Y.S.2d at 773 (citations omitted). Williams is therefore not entitled to relief on any argument advanced in support of this claim attacking his guilty plea.

    4.    *Ineffective Assistance of Counsel*

Finally, Williams claims that his trial counsel rendered ineffective assistance. Specifically, Williams faults counsel for: a) misquoting facts at the arrest stage; b) allowing the court to conduct hearings while Williams was held in a mental health cell and unable to assist in his defense; c) allowing a police officer to perjure himself; d) failing to consider whether Williams' prior conviction was valid; e) failing to challenge the judge's impartiality; and f) failing to object to the description of the person who called the ambulance.

It is well settled that a guilty plea represents a "break in the chain of events which has preceded it in the criminal process," and a defendant "may not thereafter raise independent claims

18

relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). "'He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [acceptable] standards.'" *United States v. Coffin*, 76 F.3d 494, 497 (2d Cir. 1996) (quoting *Tollett*, 411 U.S. at 267); *see United States v. Garcia*, 339 F.3d 116, 117 (2d Cir. 2003) ("It is well settled that a defendant who knowingly and voluntarily enters a guilty plea waives all non jurisdictional defects in the prior proceedings."). The *Tollett* bar also applies to "ineffective assistance claims relating to events prior to the guilty plea." *United States v. Coffin*, 76 F.3d 494, 498 (2d Cir. 1996); *see also People v. Thomas*, 768 N.Y.S.2d 519, 520 (N.Y. App. Div. 2003) (holding that a claim of ineffective assistance of counsel, based on counsel's failure to challenge the indictment, was waived as the alleged failures did not undermine the voluntariness of defendant's guilty plea).

By voluntarily pleading guilty (as discussed *supra*), Williams forfeited his right to bring claims premised on errors that counsel made or actions that counsel should have taken prior to the plea process. The *Tollett* bar thus forecloses Williams' ineffective assistance claims.[4]

---

[4] The Ninth Circuit Court of Appeals recently stated that "*Tollett*, properly understood, provides that although freestanding constitutional claims are unavailable to habeas petitioners who plead guilty, claims of pre-plea ineffective assistance of counsel are cognizable on federal habeas review when the action, or inaction, of counsel prevents petitioner from making an informed choice whether to plead." *Mahrt v. Beard*, 849 F.3d 1164, 1170 (9th Cir. Mar. 1, 2017). The Ninth Circuit thus held that a petitioner's claim challenging that counsel was ineffective for failing to file a motion to suppress was not barred under *Tollett* by the petitioner's guilty plea. *Id.* Again, "circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court[]' [and] therefore cannot form the basis for habeas relief under AEDPA." *See Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012) (citation omitted). Other courts, however, including the Supreme Court, have similarly addressed such claims on the merits because the claim, if true, affects the voluntariness of the plea such that they are not barred by *Tollett*. *See, e.g.*, *Premo v. Moore*, 562 U.S. 115, 123-32 (2011). Here, however, none of the ineffective assistance claims in the instant Petition relate to the voluntariness of Williams' plea.

V. CONCLUSION

Williams is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Court of Appeals. *See* FED. R. APP. P. 22(b); 2D CIR. R. 22.1.

The Clerk of the Court is to enter judgment accordingly.

Dated: September 24, 2018.

                                               /s/ James K. Singleton, Jr.
                                               JAMES K. SINGLETON, JR.
                                               Senior United States District Judge